IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELLI GLOVER,**
**ON BEHALF OF K.G.,**                                    Case No. 1:16 CV 84

      Plaintiff,                                               Judge Patricia A. Gaughan

      v.                                                       Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                            REPORT AND RECOMMENDATION

### INTRODUCTION

Kelli Glover ("Glover") filed a Complaint against the Commissioner of Social Security ("Commissioner") on behalf of her daughter, K.G. ("Plaintiff"), seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated January 13, 2016). Both parties have filed Briefs on the Merits. (Docs. 15 & 16).[1] Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Glover filed an application for SSI on behalf of Plaintiff in March 2013 (Tr. 127-32), alleging a disability onset date of July 6, 2002. (Tr. 154). The claims were denied initially and upon reconsideration. (Tr. 106-08, 114-16). Glover then requested a hearing before an administrative law judge ("ALJ"). On May 13, 2015, Plaintiff and Glover, represented by

---

1. The undersigned granted Plaintiff's request for a two-week extension of time to file a reply brief in July of this year (Doc. 17), but such a reply was never filed.

counsel, appeared and testified before the ALJ in Cleveland, Ohio. (Tr. 36-79). On June 9, 2015, the ALJ found Plaintiff not disabled in a written decision. (Tr. 12-29). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); 20 C.F.R. §§ 404.955, 404.981. Glover filed the instant action on behalf of Plaintiff on January 13, 2016. (Doc. 1).

FACTUAL BACKGROUND

### Hearing Testimony and Personal Background[2]

Plaintiff was born in July 2002, making her a school-age child at the time of her application, and an adolescent on the date of the ALJ's decision. 20 C.F.R. § 416.926a(g)(2); Tr. 15. She lives with her mother, twin sister, and younger brother in a two-story single family home. (Tr. 45). She is able to take care of herself by getting dressed, washing, brushing her teeth, and eating. (Tr. 55). She empties the dishwasher and helps watch her little brother. (Tr. 55).

At the time of the hearing, Plaintiff was in seventh grade and home-schooled with her twin sister. (Tr. 46). Glover described her as being in pain every day (Tr. 47-48), and needing to use an inhaler or nebulizer before she leaves the house and when she returns (Tr. 48-49). Plaintiff has asthma attacks both during the day and at night. (Tr. 49). Although a doctor had recommended exercise, her "asthma got so much worse after the fact" and the pulmonologist advised her to stop. (Tr. 56). If she "gets any type of outdoor activity, indoor activity, she has to be medicated before and after." (Tr. 57). If they go to the park, "she can't get up and can't do – whatever games that they're playing." (Tr. 62).

---

2. The undersigned summarizes the hearing testimony relevant to Plaintiff's asthma, as that is the portion of the ALJ's decision Plaintiff challenges. The transcript also contains testimony related to Plaintiff's gastrointestinal and sight problems.

Glover testified she took Plaintiff out of school and began homeschooling because Plaintiff had asthma attacks every time she went up or down the stairs at school. (Tr. 56). Glover stated Plaintiff was so sick that the school would contact her three to six times per day for pain or an asthma attack. (Tr. 57-58).

Her typical day involves waking up around eight o'clock, eating breakfast, and getting her medication. (Tr. 61). She does her school work from the bathroom or her bedroom "depend[ing] on what the pain level is at that particular time." (Tr. 61).

Plaintiff testified at the hearing that her stomach was hurting a ten on a scale of one to ten. (Tr. 70). She stated that because of her asthma she "can't run around and play with [her] little brother." (Tr. 71). She stated she likes to play word searches, both on paper and on the internet, as well as board games. *Id.* She stated that "every day, most of the time, I go to sleep and then I wake up with an asthma attack" and that she has to use her nebulizer both at day and at night. (Tr. 73). Playing with her brother, dancing with her sister, and laughing all cause asthma attacks requiring her to use her inhaler. (Tr. 73-74). Before she was home schooled, she required a nebulizer treatment before or after gym class. (Tr. 74).

***Relevant Medical Evidence***[3]

*Treating Physicians*

In a form filled out for the Social Security Administration in April 2013, Rosemary Robbins, M.D., reported treating Plaintiff starting in August 2005, and that she had last seen her the previous month—March 2013. (Tr. 321-23). She listed symptoms of shortness of breath and

---

3. Again, the undersigned summarizes only medical evidence related to Plaintiff's asthma, as Plaintiff only challenges the ALJ's failure to find her disabled on these grounds. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief waived).

coughing, and diagnoses of mild persistent asthma and food allergies. (Tr. 322). She noted Plaintiff "does very well on Flovent" and using an inhaler as needed. (Tr. 323).

At a visit in April 2013, Dr. Robbins reported "ongoing mild persistent asthma" and that Plaintiff was "[c]ontinuing on asthma maintenance medications" and needed a mask and tubing for her nebulizer. (Tr. 325). She noted Plaintiff's asthma was under "fair control" with symptoms more than twice per week, but less than once per day. (Tr. 326). She reported nighttime symptoms more than twice per month. *Id.* She prescribed ProAir HFA[4] Aerosol Inhaler ("as needed for cough or difficulty breathing"), Orapred[5] Solution ("two [teaspoons] by mouth every day for 5 days in case of asthma attack"), and Flovent HFA[6] Aerosol "(two puffs twice a day"). *Id.*

Also in April 2013, Plaintiff was seen in the emergency room with a suspected acute allergic reaction. (Tr. 381-82). Doctors noted reported throat itchiness, a rash, and mild shortness of breath. *Id.* Notes indicate Plaintiff had a known allergy "but patient was craving cheesy eggs." *Id.* Glover had given Plaintiff an albuterol nebulizer treatment to treat the shortness of breath. *Id.* Emergency room notes indicate a "known history of asthma which she treats with daily steroid and albuterol when necessary." *Id.*

---

4. ProAir HFA brand name albuterol, which is a bronchodilator. *See* Mayo Clinic*, Albuterol (Inhalation Route),* http://www.mayoclinic.org/drugs-supplements/albuterol-inhalation-route/description/drg-20073536 (last visited November 17, 2016).

5. Orapred is brand name prednisolone, which is a corticosteroid. *See* Mayo Clinic, *Prednisolone (Oral Route),* http://www.mayoclinic.org/drugs-supplements/prednisolone-oral-route/description/drg-20075189 (last visited November 17, 2016).

5. Flovent HFA is a brand name corticosteroid. *See* Mayo Clinic *Corticosteroid (Inhalation Route),* http://www.mayoclinic.org/drugs-supplements/corticosteroid-inhalation-route/description/drg-20070533 (last visited November 17, 2016).

Later the same month, Alton L. Melton, Jr., M.D., reported—in the context of allergy testing—that Plaintiff's lungs had "[v]ery good air entry and were completely clear to auscultation without wheezing, rales, or rhonchi." (Tr. 394). He also noted:

> Regarding her intermittent asthma, it appears that her oral steroid requirements are excessive for someone not taking a daily asthma control medication, with 3-5 courses of oral steroids required per year. Therefore, she was given Flovent 110 mcg 2 puffs twice daily to use on a consistent daily basis for asthma control. She should use albuterol by inhaler or nebulizer q 4 hours PRN cough, wheeze, or breathing difficulty, as well as consistently 15-20 minutes prior to exercise or cold air exposure.

*Id.*

A chest x-ray performed at Fairview Hospital in May 2013 during an asthma exacerbation was normal. (Tr. 365); *see also* Tr. 388.

At a gastrointestinal consult in July 2013, Reinaldo Garcia-Naviero, M.D., noted Plaintiff had a history of asthma symptoms, "look[ed] well and in no acute distress", and had a normal cardiorespiratory exam. (Tr. 398-99).

In November 2013, Plaintiff was seen by pediatric pulmonologist Laura Milgram, M.D., at the Rainbow Babies & Children's Hospital Pulmonology / Asthma Center. (Tr. 416-17). Dr. Milgram noted Plaintiff had required five-day prednisone courses five to six times a year. (Tr. 416). She indicated Plaintiff's asthma was severe and poorly controlled and that Plaintiff needed albuterol daily. (Tr. 417). On examination, Dr. Milgram noted no dullness to percussion, wheeze, crackles, or retractions. *Id.* Dr. Milgram changed Plaintiff's medications, and advised her to follow up in two months. *Id.*

Plaintiff returned to Dr. Milgram in January 2014. (Tr. 414-15). Dr. Milgram again noted Plaintiff's asthma was severe and the risk and impairment were both poorly controlled. (Tr. 414). She noted Plaintiff "got prednisone" on November 18, 2013 and December 5, 2013, and had visited the emergency room in December 2013. (*Id.*). She changed Plaintiff's medication to

5

Symbicort[7] and ordered a sinus CT scan to rule out sinusitis. *Id.* The CT showed "mild sphenoid sinusitis and rhinitis." (Tr. 428).

In April 2014, Plaintiff followed up with Dr. Milgram, who noted improvement with Symbicort and home schooling. (Tr. 412). Plaintiff had nighttime coughing or wheezing less than one time per week. *Id*. Her pulmonary function test was normal. *Id.* Plaintiff's asthma was noted be severe, but both risk and impairment were well-controlled. *Id.* Dr. Milgram instructed Plaintiff to continue her medications and follow up in four months. *Id.*

Plaintiff again saw with Dr. Milgram in August 2014. (Tr. 410). Dr. Milgram noted Plaintiff had symptoms when laughing, or playing with her sister. *Id.* She was noted to be "overall much improved, but still has regular [symptoms]." *Id.* Again, her asthma was indicated to be severe, with risk well-controlled and impairment not well-controlled. *Id.* She had nighttime coughing or wheezing one to two times per week, and used her albuterol one to two times per week. *Id.* Dr. Milgram advised Plaintiff to continue Symbicort, and to use albuterol before exercise and as needed. *Id.* Plaintiff's spirometry test was normal. (Tr. 421).

In December 2014, Plaintiff returned to Dr. Milgram. (Tr. 404-09). Dr. Milgram noted Plaintiff "did have exacerbation at the end of September that required course of prednisone, but otherwise asthma seems to be under improved control since last visit, but still using pro air inhaler 1-2 times a day and occasionally waking up at night still, although 'way better' than it was in past." (Tr. 404). Dr. Milgram prescribed a course of prednisone to be used for three to five days "as directed for asthma exacerbation" and advised her to continue Symbicort. (Tr. 408-09).

---

7. Symbicort is a brand name budesonide (corticosteroid) and formoterol (bronchodilator). *See* Mayo Clinic, *Budesonide and Formoterol (Inhalation Route)*, http://www.mayoclinic.org/drugs-supplements/budesonide-and-formoterol-inhalation-route/description/drg-20068949 (last visited November 17, 2016).

At a gastrointestinal follow-up in December 2014, Plaintiff had no cough, wheezing, or shortness of breath (Tr. 431), and her lungs were clear to auscultation (Tr. 434).

Education records note Plaintiff's asthma and its limitations on her ability to participate in recess and physical education, *see* Tr. 140-141, 243, and contain instructions for administering asthma medication in the event of an attack, *see* Tr. 140.

*Opinion Evidence*

In May 2013, Uma Gupta, M.D., reviewed Plaintiff's medical records on behalf of the state agency. (Tr. 80-85). Dr. Gupta opined Plaintiff's impairments did not "functionally equal a listing" because although Plaintiff's "medically determinable impairment or combination of impairments is severe", it did not "meet, medically equal, or functionally equal the listings[.]" (Tr. 85). The form noted Dr. Gupta considered Listing § 103.03—Asthma. (Tr. 84). In evaluating the evidence, Dr. Gupta noted "no frequent [emergency department] visits or [inpatient] for Asthma were noted in the records." *Id.* She concluded that "[m]edical evidence shows that [Plaintiff] does have severe impairments that limit her ability to function. However, her limitations are not so severe that they are preventing her from growing and developing adequately." (Tr. 86).

On June 27, 2013, Dr. Robbins completed a form stating Plaintiff's asthma symptoms "met or equaled" Listing 103.03 for asthma as of that date. (Tr. 388). She noted there were no expiratory testing values because "[t]he pulmonologist will do this in July." *Id.* With regard to § 103.03(C), which requires "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetric bronchodilators", Dr. Robbins wrote "Albuterol/yes. Has moderate persistent asthma and multiple allergies[.]" *Id.* With regard to whether Plaintiff had had "[s]hort courses of

corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period", Dr. Robbins noted: "5-day course 4/5/2013—documented. [B]ut mother did give another/other doses of steroids—approx. x 5 in past." *Id.*

In November 2013, Anahi Ortiz, M.D., reviewed Plaintiff's records at the request of the state agency and reached the same conclusions as Dr. Gupta. (Tr. 90-103). The form indicates Dr. Ortiz considered Listing 103.03 (Tr. 99), but concluded Plaintiff's "medically determinable impairment or combinations of impairments is severe but does not meet, medically equal, or functionally equal the listings" (Tr. 101). Dr. Robbins' opinion is noted. (Tr. 93, 101). In the summary of Dr. Robbins' opinion, the agency noted that the evidence cited by Dr. Robbins on the form did not meet the requirements of the listing. (Tr. 93). Dr. Ortiz—liked Dr. Gupta— concluded Plaintiff's "limitations are not so severe that they are preventing her from growing and developing adequately" (Tr. 102).

### *ALJ Decision*

In her written decision dated June 9, 2015, the ALJ found Plaintiff: 1) had not engaged in substantial gainful activity since her application date; 2) had severe impairments of asthma, irritable bowel syndrome, reduced vision, and bilateral myopia; 3) did not have an impairment of combination of impairments that met or medically equaled a listed impairment; and 4) did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (Tr. 15-29). Therefore, she concluded Plaintiff was not disabled. (Tr. 29).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). For claimants under the age of 18, the Commissioner follows a three-step evaluation process—found at 20 C.F.R. § 416.924(a)—to determine if a claimant is disabled:

1.   Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2.   Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it causes a slight abnormality or a combination of slight abnormalities which causes no more than minimal functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3.   Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine, under step three of the analysis, if a child "meets" a listed impairment, a child must demonstrate both "A" and "B" criteria of the impairment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003). "To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio) (citing 20 C.F.R. § 416.926(a)).

## DISCUSSION

Plaintiff raises two related objections to the ALJ's decision: 1) the ALJ's conclusion that Plaintiff did not meet or medically equal Listing 103.03 is not supported by substantial evidence; and 2) the ALJ violated SSR 96-5p in failing to recontact Dr. Robbins (who opined that the listing was met). (Doc. 15). The Commissioner responds that the ALJ's decision was supported by substantial evidence and the duty to recontact Dr. Robbins was not triggered. (Doc. 16).

Although the ALJ must explain her Step Three decision, Plaintiff bears the burden of proving she meets a listed impairment. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff must "present medical findings that satisfy each criterion of the particular listing." *Lee v. Comm'r of Soc. Sec.* 529 F. App'x 706, 710 (6th Cir 2013). Remand is only

10

appropriate when the record raises a "substantial question" regarding whether Plaintiff meets a listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641-42 (6th Cir. 2013) (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). If a claimant meets the requirements of a listing, the ALJ must find her disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii).

### *Listing 103.03 – Asthma*[8]

Plaintiff contends her record raises a "substantial question" regarding whether her asthma met Listing 103.03(C)(2). The Commissioner responds that Plaintiff cannot show she met the listing's criteria and the ALJ's decision so finding is supported by substantial evidence.

The listing at issue required, in relevant part:

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetric bronchodilators with one of the following:

***

2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period.

20 C.F.R. Part 404, Subpart P, § 103.03 (2015).

Plaintiff's counsel made this argument at the ALJ hearing (Tr. 40-41), and the ALJ addressed it in her written decision:

As to 103.03(C)(2), Dr. Robbins indicated a documented five day course of corticosteroids beginning April 5, 2013, though the mother gave another course of steroids in the past. (Exs. 3A, p.4 [Tr. 93], 3F, p. 6-7 [Tr. 325-26], and 7F [Tr. 387-88]). Like the State agency medical consultant, I find this does not satisfy the requirement of short courses of corticosteroids that average more than 5 days per

---

8. Between the time Plaintiff filed for disability and now, the medical criteria for evaluating respiratory system disorders, including asthma under § 103.03, have changed. *See Revised Medical Criteria for Evaluating Respiratory System Disorders,* 81 Fed. Reg. 37318-01, 2016 WL 3185335 (June 9, 2016) (effective Oct. 7, 2016). The undersigned refers to and applies the version of § 103.03 in effect at the time of the ALJ's decision. *See id.* ("We will apply the final rules to new applications filed on or after the effective date of these final rules and to claims that are pending on or after the effective date.").

month for at least 3 months during a 12-month period, during the period
addressed by Dr. Ortiz or during any subsequent period.

(Tr. 16).

Plaintiff contends she did not experience any "extended symptom-free periods" and
"required short courses of corticosteroids that averaged more than 5 days per month for at least 3
months during a 12-month period", citing "a 5-day burst of corticosteroids—Prednisone—on
April 15, 2013, November 18, 2013, December 5, 2013, and December 19, 2014." (Doc. 15, at
12) (citing Tr. 326, 408-09, 414). The Commissioner does not dispute the lack of extended
symptom-free periods but argues Plaintiff has not presented evidence to satisfy subsection
(C)(2).

The records cited by Plaintiff show: 1) Dr. Robbins prescribed a 5-day course of Orapred
on April 5, 2013 to have "on hand for asthma attacks" with one refill (Tr. 326)[9]; 2) Dr.
Milgram's note that Plaintiff "got prednisone" on November 18, 2013, and December 5, 2013
(Tr. 414); and 3) Dr. Milgram's December 2014 prescription of a 3-5 day course of prednisone
for asthma exacerbation "to have on hand at home" with one refill (Tr. 408-09). There is no
evidence of the length of the course of the November 18, 2013, or December 8, 2013, prednisone
courses, but even presuming Plaintiff's statement that they were five-day courses—like that in
April—is correct, this does not meet the listing's requirement of "short courses of corticosteroids
that average *more than* 5 days per month for at least 3 months during a 12-month period." 20
C.F.R. Part 404, Subpart P, § 103.03 (2015). Rather, it would show Plaintiff received short

---

9. Dr. Robbins cited this prednisone course in support of her opinion that Plaintiff met the
listing's requirements. *See* Tr. 388 ("5 day course 4/5/2013 – documented").

course corticosteroids *exactly* five days per month for three months out of twelve.[10] As the Commissioner correctly points out, there is no record evidence supporting the notion that Plaintiff ever received a short course of corticosteroids for more than five days. Similarly, Dr. Milgram's statement that Plaintiff previously received five-day courses of prednisone five to six times a year (Tr. 416) is not supported with record evidence. Even if it were, without dates, it does not show that Plaintiff meets the "*more than* five days per month for at least 3 months" requirement of the listing. Finally, in her June 27, 2013 opinion, under the § 103.03(C)(2) requirement, Dr. Robbins stated "5 day course 4/5/2013 – documented[,] but mother did give another/other courses of steroids – approx. x 5 in past." (Tr. 388). Again, without dates and evidence, this does not show Plaintiff meets the plain language of the listing.

Plaintiff also briefly argues that Drs. Robbins and Milgram have required her to use daily corticosteroid inhalers since at least April 2013, and that this should satisfy § 103.03(C)(2)'s requirement. Other courts have rejected such arguments, finding that daily inhaler use does not fall within the listing's "short courses of corticosteroids". *See Sanchez ex rel. Sanchez v. Barnhart*, 2005 WL 752220, *9 (W.D. Wis. 2005) (analyzing the difference between inhaled corticosteroids and oral or intravenous corticosteroids, such as prednisone and concluding "[it] is clear that the commissioner's use of the term 'short courses of corticosteroids' in Listing 103.03C2 refers to this latter form of steroids and not to long-term, daily use of a steroid inhaler."); *see also S.N.B. ex rel. Jordan v. Astrue*, 2013 WL 936552, *3 (S.D. Ind.) (distinguishing between daily steroid inhaler and oral or intravenous corticosteroids and

---

10. The undersigned also notes a reference in the record to Plaintiff having required a course of prednisone in "late September" 2014 (Tr. 404). Neither party identifies this reference, though the ALJ did acknowledge it in his discussion of Dr. Milgram's records. *See* Tr. 28. Even adding this additional (presumably 5-day) course of prednisone, Plaintiff does not satisfy § 103.03(C)(2)'s language.

concluding only the latter are included in § 103.03(C)(2) and concluding Plaintiff's use of Flovent and Budesonide did not satisfy the listing); *Shattles v. Astrue*, 2010 WL 3801307, *6-8 (W.D. La.) (report and recommendation adopted as modified by 2010 WL 3883888) ("Listing-level asthma is not merely the existence of asthma which requires treatment to prevent attacks. Asthma that is controlled by preventative medication is simply not disabling . . . Listing 103.03(C)(2) is expressly limited to 'short course steroids,' which are the quick relief steroids and not the long-term, low-dose preventive steroids."); *cf. Correa v. Comm'r*, 381 F. Supp. 2d 386, 396 (D.N.J. 2004) (instructing the ALJ, on remand, that "the term 'corticosteroid,' shall be interpreted to include corticosteroids taken by any method of delivery").[11]

The undersigned agrees with the *Sanchez*, *Jordan*, and *Shattles* (among other) cases that the "short courses of steroids" does not contemplate daily inhaler use. As one court aptly noted, "[t]o conclude otherwise would lead to the absurd result that thousands of children with only mild asthma could be found disabled under the Social Security Act." *Sanchez*, 2005 WL 752220, at *9. Moreover, Dr. Ortiz, the second state agency physician who reviewed Plaintiff's records on reconsideration in November 2013, had Plaintiff's records indicating daily Flovent (an inhaled corticosteroid) use, *see* Tr. 97, and concluded Plaintiff did not meet the listing (Tr. 99, 101). The ALJ reasonably relied on the above evidence and Dr. Ortiz's opinion.

The ALJ addressed the evidence in Dr. Robbins' June 27, 2013 opinion and concluded that the requirements of § 103.03(C)(2) were not satisfied "during the period addressed by Dr. Ortiz or during any subsequent period." (Tr. 16). As evidenced by the discussion of the evidence presented above, that conclusion is supported by substantial evidence in the record. The record

---

11 .The *Shattles* court distinguished *Correa*: "[T]he reasoning given by the judge in that case fails to address the intent of the Listing to find only severe and difficult to control cases of asthma to be per se disabling and, therefore, should not be followed by this court." 2010 WL 3801307, at *7.

does not raise a "substantial question" regarding whether Plaintiff meets the listing. *Sheeks,* 544 F. App'x at 641. Therefore, remand is not required, and the undersigned recommends the ALJ's listing decision be affirmed.

       ***SSR 96-5p:***

       In a second, related argument, Plaintiff contends the ALJ was required to recontact Dr. Robbins to clarify the basis for her opinion. The Commissioner responds that an ALJ was not required to recontact Dr. Robbins.

       Social Security Ruling 96-5p addresses "Medical Source Opinions on Issues Reserved to the Commissioner." 1996 WL 374183. It provides, in relevant part:

Requirements for Recontacting Treating Sources

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

*Id.*, at *6. "Generally, an Administrative Law Judge need recontact a medical source only if the evidence received from that source is 'inadequate' for a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006).

       The Sixth Circuit described a two-part to determine if recontact was required by SSR 96-5p. *See Ferguson v. Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010). First, the evidence in the record must not support the treating physician's opinion. *Id.* Second, the ALJ must be unable to ascertain the basis of the opinion from the evidence in the record. *Id.* In *Ferguson*, the plaintiff could not meet the second prong of the test because the ALJ explained that the applicable physician's opinion was based on self-reported history and subjective complaints, not on objective medical evidence. *Id.* The Sixth Circuit noted that "to the extent the ALJ 'rejected' [the

15

treating physician's] 'opinion of disability,' he did so not because the bases for her opinion were unclear to him, but because those bases, Ferguson's self-reported history and subjective complaints, were not supported by objective medical evidence." *Id.* In so interpreting SSR 96-5p, the court noted that the requirement to recontact "parallel[ed]" that in 20 C.F.R. § 416.912(e) "which also recognize[d] a duty to recontact in cases where the evidence from the treating physician is inadequate to determine disability and contains a conflict or ambiguity requiring clarification." *Id*. at 273 n.2.

Preliminarily, although not raised by either party here, many courts have found that such a *mandatory* duty to recontact in SSR 96-5p is no longer valid in light of regulatory changes. *See Moss v. Colvin*, 171 F. Supp. 3d 1249, 1256 (N.D. Ala. 2016) ("SSR 96-5p has been superseded . . . and the decision to recontact a physician is now within the ALJ's discretion."); *Hall v. Comm'r of Soc. Sec.*, 2016 WL 3869936, *9 (E.D. Mich.) ("New regulations became effective on March 26, 2012, rendering the decision to recontact discretionary."); *Ross v. Colvin*, 2015 WL 1636132, *4 n.4 (M.D. Pa.) ("In March 2012 . . . the recontact provisions in 20 C.F.R § 404.1512 and 404.1527 were deleted, and a modified recontact provision using permissive, rather than mandatory, language was codified in 20 C.F.R. § 404.1520b."); *see also Balocca v. Colvin*, 2016 WL 1171497, *5 (D. Kan.) (noting regulatory change); *Hall v. Colvin*, 2016 WL 5239832, *11 n.10 (W.D. Okla.) (same); *Snyder v. Colvin*, 2016 WL 5791203, *5 (D. Colo.) (same). In 2012, before the case at issue was decided, § 416.912(e) was eliminated, and new § 404.920b(c)(1) was added. *How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10651, 2011 WL 7404303 (Feb. 23, 2012) (effective March 26, 2012). The eliminated provision provided, in part:

> When the evidence we receive from your treating physician . . . is inadequate for
> us to determine whether you are disabled . . .

> (1) We *will* first recontact your treating physician . . . to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e) (2011) (emphasis added). New regulatory provision § 416.920b, entitled "How we consider evidence", explains that if there is "insufficient evidence to determine whether you are disabled or if after weighing the evidence we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We *may* recontact your treating physician." 20 C.F.R. § 416.920b(c)(1) (emphasis added). Thus, courts have reasonably concluded the duty to recontact is now permissive, rather than mandatory. *See, e.g., Moss*, 171 F. Supp. 3d at 1256.

Plaintiff does not base her argument on former § 416.912(e), rather she contends that "SSR 96-5p's duty to recontact parallels that set forth in 20 C.F.R. § 416.912(d), which also recognizes a duty to recontact in cases where the evidence from the treating physician is inadequate to determine disability and contains a conflict or ambiguity requiring clarification". (Doc. 15, at 13 n.6). This argument is not well-taken. First, as noted above, the *Ferguson* court explicitly recognized that SSR 96-p's recontact provision was based on former § 416.912(e). 628 F.3d at 273 n.2. Second, § 416.912(d) describes the ALJ's general duty to develop the record and does not address recontacting a physician for clarification of conflict or ambiguity. It does, as Plaintiff points out, define "every reasonable effort" to help a claimant obtain medical records:

> (1) Every reasonable effort means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that

17

source indicates that a longer period is advisable in a particular case. 20 C.F.R. § 416.912(d)(1). This section describes what an ALJ will do if a medical source does not respond to a request for evidence. This is not what happened here. Here, the ALJ had treatment records from Dr. Robbins spanning the time period from September 2012[12] through October 2014. Plaintiff does not assert Dr. Robbins failed to provide certain records, or assert what objective evidence she might supply to show Plaintiff meets § 103.03(C)(2).

The undersigned concludes the ALJ did not abuse her discretion here in failing to recontact Dr. Robbins. The record reflects the ALJ thoroughly reviewed the entire record and had substantial evidence to support her conclusion that Plaintiff was not disabled. She was not required to recontact Dr. Robbins in these circumstances where there was sufficient evidence to support her findings. *See* 20 C.F.R. 416.920b (noting that an ALJ *may* recontact a treating physician *if* there is insufficient evidence to determine disability).

Moreover, even if the rule regarding recontacting from SSR 96-5p were applicable, it is not triggered by the facts here. *See Ferguson*, 628 F.3d at 273; *see also Pearson v. Barnhart*, 2005 WL 1397049, *4 (E.D. Tex.) ("The duty to re-contact is triggered when the evidence is insufficient to make an *informed* determination not when the evidence is insufficient to make a *favorable* determination."). The first prong, as described in *Ferguson*, is satisfied—the record does not support Dr. Robbins' opinion that Plaintiff met the Listing's requirement. However, the second prong is not satisfied. The ALJ did not say he could not ascertain the basis for the opinion. Rather, she concluded that Dr. Robbins' opinion was not based on evidence that Plaintiff's symptoms met the medical requirements of the listing, that such evidence was not in

---

12. Exhibit 3F contains Dr. Robbins' response to a records request from the state agency. It contains records dating from September 2012, although the records prior to April 2013 are copies of records from other physicians for non-asthma related issues. *See* Tr. 320-52.

the record, and thus discounted the opinion. *See* Tr. 15-16. An examination of Dr. Robbins' one-page form opinion indicates that apparently she listed the medical evidence relevant to each section of the § 103.03 listing, even if such evidence did not meet the stated requirements. *See* Tr. 388.[13] As noted above, Dr. Robbins' distinguished on the form between a "documented" five day course of corticosteroids in April 2013 and "another/other courses of steroids" given by Glover five times in the past. (Tr. 388). There is no record support of when these courses were given or for how long.

As discussed in the first part of this opinion, Plaintiff does not point to record evidence to demonstrate she met the listing requirements. Moreover, the ALJ had records from Dr. Robbins spanning September 2012 through October 2014. (Tr. 320-52, 389-99, 464-73). Plaintiff bears the burden of establishing disability, which includes the requirement that she provide "medical findings that satisfy each criteria of the particular listing." *Lee*, 529 F. App'x at 710. She has not done so here.

Analogous to *Ferguson*, the ALJ here rejected Dr. Robbins' opinion that Plaintiff met the listings' requirements "not because the bases of her opinion were unclear to [her], but because those bases . . . were not supported by objective medical evidence." 628 F.3d at 273. The undersigned finds, therefore, that the ALJ did not err in not recontacting Dr. Robbins and the ALJ's conclusion regarding Listing 103.03—as discussed above—is supported by substantial evidence.

---

13. For example, under § 103.03(C)(1) (not at issue here), which required "[p]ersistent prolonged expiration with radiographic or other appropriate imaging techniques, evidence of pulmonary hyperinflation or peribronchial disease", Dr. Robbins noted "[chest x-ray] 5/18/13 during acute asthma exacerbation was normal", *id.*, even though that evidence plainly did not satisfy the listing's requirement.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI benefits supported by substantial evidence. Accordingly, the undersigned recommends the decision of the Commissioner be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).